## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYQUON WILLIAMS | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-01125 (JCH) |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPARTMENT OF TRANSPORTATION, | : | |
| JOE KELLY, and PASQUALINO BRUNO, | : | FEBRUARY 7, 2023 |
|     Defendants. | : | |

## RULING ON MOTION TO DISMISS
## (DOC. NO 12)

### I.    INTRODUCTION

Plaintiff, Tyquon Williams ("Williams"), brings this lawsuit against the Connecticut Department of Transportation ("DOT"), Joe Kelly ("Kelly"), and Pasqualino Bruno ("Bruno") alleging state and federal constitutional violations in the workplace. Williams asserts that he has been subjected to racial slurs and treated differently from his colleagues because of his race.

Now before the court is the defendants' Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 12), which Williams opposes. See Plaintiff's Memorandum of Law in Support of Objection to Motion to Dismiss ("Pl.'s Mem.") (Doc. No. 27). For the reasons explained below, the Motion is granted.

## II.    BACKGROUND[1]

Williams works as a Maintainer 2 for DOT.  See Compl. ¶ 3.  He requested training to advance to Grade 3 positions, but his supervisors—Bruno and Kelly—denied him the opportunity.  Id. ¶¶ 4–5.  Williams, who is Black, was not given the chance to progress to more lucrative work while his white colleagues were allowed to do so.  Id. ¶ 6.  In addition to having his career advancement stymied, Williams has also been forced to perform more arduous work under more intense scrutiny than his white coworkers.  Id. ¶ 7.

Bruno and Kelly, both of whom are white, have held meetings with only white employees "to discuss and coordinate complaints against the [p]laintiff and other African-American employees."  Id. ¶ 8.  Moreover, Kelly has referred to Williams and other Black employees as "worthless ni***rs", and Bruno told the plaintiff that he will "run the place like a prison and make [the African-American employees] feel at home."  Id. Bruno and Kelly have also looked the other way as white coworkers called Williams a "lazy n****r."  Id. ¶ 8.

Williams filed his Complaint in Connecticut Superior Court on August 5, 2022.  Id. After service was made only on the Office of the Connecticut Attorney General, see Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem.") at 1–2 (Doc. No. 12–1), the defendants removed the lawsuit to federal court on September 7, 2022, see Notice of Removal (Doc. No. 1).

---

[1] The facts in this section are drawn from the well-pleaded allegations in the Complaint.  See Complaint ("Compl.") (Doc. No. 1–1).  Because, at the motion to dismiss stage, the court must accept all factual allegations in the Complaint as true, "we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim."  Sung Cho v. N.Y.C., 910 F.3d 639, 642 n.1 (2d Cir. 2018) (internal quotation marks and citations omitted).

Now, the defendants move to dismiss the Complaint for lack of subject matter jurisdiction.  See Mot. to Dismiss; Defs.' Mem.; Defendants' Reply in Support of their Motion to Dismiss (Doc. No. 28).  Williams objects to the defendants' Motion.  See Pl.'s Mem.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion.  Makarova, 201 F.3d at 113.

## IV.   DISCUSSION

### a.  Fourteenth Amendment Claim Pursuant to Section 1983

The defendants posit that Williams' section 1983 claim against DOT and the two individual defendants in their official capacity is barred by operation of the Eleventh Amendment.[2]  See Defs.' Mem. at 4.  Williams counters that the Eleventh Amendment

---

[2] "Whether this immunity argument is brought properly under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit." Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022) (citing Ripa v. Stony Brook Univ., 808 F. App'x 50, 51 n.1 (2d Cir. 2020)).  At the same time, the "distinction has no practical effect in this case because whether brought under either subdivision, the Court considers on this motion only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." Id. (quotations and citations omitted).

does not bar suits under section 1983 against state employees in their individual capacity and allows actions against state employees in their official capacity where the plaintiff seeks prospective equitable relief.  <u>See</u> Pl.'s Mem. at 6, 10.

The Eleventh Amendment prohibits suit against a state in federal court, absent consent of the state or abrogation by Congress.  <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  This immunity extends not only to states themselves, but also to state agencies or state officers in their official capacity.  <u>Id.</u>; <u>see, e.g.</u>, <u>Smith v. Connecticut Dep't of Corr.</u>, 2014 WL 3824357, at *6 (D. Conn. Aug. 4, 2014) (holding that the Eleventh Amendment bars suit against the Connecticut Department of Corrections).  Congress may abrogate the Eleventh Amendment immunity of a state or a state agency pursuant to its powers under Section 5 of the Fourteenth Amendment.  <u>Santiago v. New York State Dep't of Corr. Servs.</u>, 945 F.2d 25, 28 (2d Cir. 1991).  However, where Congress has not done so expressly, the Fourteenth Amendment itself does not abrogate the Eleventh Amendment and authorize such suit.  <u>Id.</u>  Nor does section 1983 in this case: a state agency, such as DOT, is not a "person" for purposes of section 1983.  <u>Will v. Mich. Dep't State Police</u>, 491 U.S. 58, 64 (1989); <u>Spencer v. Doe</u>, 139 F.3d 107, 111 (2d Cir. 1998).

As a state agency, DOT is protected against suit by the Eleventh Amendment. Williams is therefore prohibited from suing DOT on his equal protection claim, and his claim against DOT is dismissed with prejudice.

Next, the court turns to the claims against Bruno and Kelly in their official capacity.  The Eleventh Amendment bars suits for monetary damages against state officials sued in their official capacities.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).

Ex parte Young provides that an exception to the Eleventh Amendment exists when a party sues a state official to enjoin an unconstitutional action. Pennhurst, 465 U.S. at 102. In the case at bar, Williams' Complaint does not request any specific declaratory or injunctive relief, but rather vaguely calls for "other and further relief as in law or equity would pertain." See Compl. at 5. This is insufficient for the court to conclude that Williams has requested prospective equitable relief. See Bogle-Assegai v. Comm'n on Hum. Rts. & Opportunities, 331 F. App'x 70, 72 (2d Cir. 2009) (concluding that the plaintiff was not entitled to press claims for injunctive relief where she failed to request any specific injunctive relief in her Complaint).

Thus, any claims against Bruno and Kelly in their official capacity that seek monetary damages are dismissed with prejudice, but claims against them seeking prospective equitable relief may be repleaded provided Williams offers a specific request for declaratory or injunctive relief.

Finally, Bruno and Kelly assert that they were not sued in their individual capacity because of the manner in which they were served process. Section 52–57(a) of the Connecticut General Statutes notes that, "[e]xcept as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52–57(a). By contrast, section 52–64(a) provides that:

> Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by a proper officer [on the state Attorney General].

Conn. Gen. Stat. § 52–64(a).  To properly serve a state official in their individual

capacity, plaintiffs are "required to serve process in the form prescribed by § 52–57(a)

. . . ."  <u>Davis v. Mara</u>, 587 F.Supp.2d 422, 427 (D. Conn. 2008).  Indeed, "[s]ervice on a

defendant in his official capacity does not constitute service on the defendant in his

personal capacity."  <u>Igidi v. Connecticut Dep't of Corr.</u>, 2015 WL 136400, at *2 n.2 (D.

Conn. Jan. 9, 2015).

　　　　Here, service was only made on the Office of the Connecticut Attorney General,

in compliance with section 52–64.  Despite this, Williams insists that he did intend to

sue Kelly and Bruno in their individual capacity, whereas the defendants aver that this is

proof that Williams did not.  Rather than elucidating the type of claim asserted, this

issue is fundamentally one over service of process and whether the court has personal

jurisdiction over the individual defendants in their personal capacity.  The court is not

inclined to dismiss the claim against the individual defendants on this ground, and

instead will exercise its discretion to grant Williams a 60-day extension from the date of

this Ruling to effect proper service—in accordance with section 52–57(a)—on Kelly and

Bruno.  <u>See</u> <u>Leonard v. General Motors L.L.C.</u>, 504 F. Supp. 3d 73, 102 (D. Conn.

2020) (extending by 60 days the date by which to effect proper service, even in the

absence of "any good cause for the failure to serve th[e] defendants"); <u>Estate of A.A. v.</u>

<u>Unites States</u>, 2016 WL 7471634, at *7, *9 (exercising the court's discretion to extend

by 45 days the date by which to effect proper service, as permitted by Rule 4(m)).  If

Williams fails to file an affidavit showing proof of service in the time allotted, Kelly and

Bruno should file a brief motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(2) or (b)(5).

b.  <u>Claim Pursuant to Article First, Section 20 of the Connecticut Constitution</u>

The defendants argue that Williams' claim pursuant to Article First, Section 20 of the Connecticut Constitution must be dismissed "because there is no private cause of action for claims brought under Article First, § 20."  Defs.' Mem. at 6.

While the Connecticut Supreme Court has recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of the Connecticut Constitution, it "emphasize[d] that [its] decision to recognize a <u>Bivens</u>[3]-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."  <u>Binette v. Sabo</u>, 244 Conn. 23, 47 (1998).  Indeed, numerous courts in this District as well as Connecticut Superior Courts have concluded that there is not a private right of action under Article First, Section 20 of the Connecticut Constitution.  <u>See</u> <u>Rahim v. Barsto</u>, 2022 WL 2704102, at *9 (D. Conn. July 12, 2022) (declining to exercise supplemental jurisdiction over a claim brought under Article First, Section 20 because it raises "new and undeveloped issues under state law."); <u>Pierce v. Semple</u>, 2018 WL 6173719, at *6 (D. Conn. Nov. 26, 2018) ("[N]either this court nor the Connecticut Supreme [C]ourt has ever recognized a private cause of action under Article First, § 20 of the Connecticut Constitution."); <u>Richard v. Strom</u>, 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (determining "[t]here is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First, Sections 3, 8, and 20)"); <u>Monger v. Connecticut Dep't of</u>

---

[3] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971) (holding that a "violation of [the Fourth Amendment's prohibition against unreasonable searches and seizures] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct.").

Transp., 2017 WL 3996393, at *6 (D. Conn. Sept. 11, 2017) ("Because Connecticut state courts have not created a private cause of action under Section 20, . . . federal district courts in Connecticut have declined supplemental jurisdiction over claims under Section 20."); Minto v. Dep't of Mental Health & Addiction Servs., 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20"); Torres v. Armstrong, 2001 WL 1178581, at *5-*7, & n.4 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize claims for money damages and injunctive relief brought directly under Article First, Sections 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution).

In arguing against dismissal, Williams does not point to a single case acknowledging a private cause of action under Article First, Section 20.  Instead, he argues that one of the cases to which the defendants cite is distinguishable from the instant action.  Pl.'s Mem. at 12.  In particular, he avers that the legislature has provided plaintiffs with adequate remedies for acts and omissions related to taxation of property—as discussed in Massey v. Town of Branford, 2006 WL 1000309, at *6 (Conn. Super. Ct. Mar. 28, 2006)—but suggests that there is no adequate statutory scheme to address the conduct of the defendants in the case at bar.  However, Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act are legislative schemes well-suited to address the workplace discrimination for which Williams seeks a remedy.

Accordingly, the court declines jurisdiction over any claims brought under Article First, Section 20 of the Connecticut Constitution and grants Williams' Motion to Dismiss on this basis.

**V.     CONCLUSION**

For the reasons stated above, the Motion to Dismiss (Doc. No. 12) is granted. The claim under Article First, Section 20 of the Connecticut Constitution as well as the section 1983 claim against DOT are dismissed with prejudice.  The section 1983 claim against Kelly and Bruno in their official capacity is dismissed without prejudice, and Williams may file an Amended Complaint consistent with this Ruling.  Any Amended Complaint must be docketed within 21 days of this Ruling.  Moreover, Williams must serve Kelly and Bruno in their personal capacities within 60 days of this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of February 2023.


 /s/  Janet C. Hall
Janet C. Hall
United States District Judge