**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TYQUON WILLIAMS<br>Plaintiff, | : | CIVIL CASE NO.<br>3:22-CV-01125 (JCH) |
| v. | : | |
| JOE KELLY and PASQUALINO BRUNO<br>Defendants. | : | NOVEMBER 3, 2023 |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 36 & 37)**

## I. INTRODUCTION

Plaintiff, Tyquon Williams ("Williams"), brings this lawsuit against Joe Kelly ("Kelly") and Pasqualino Bruno ("Bruno") under section 1983 of title 42 of the United States Code and the Connecticut Constitution, alleging federal and state constitutional violations in the workplace. Williams asserts that he has been subjected to racial slurs and treated differently from his colleagues because of his race.

Now before the court is the defendants' Motion to Dismiss, brought by the defendants in their official capacities, see Motion to Dismiss in Defendants' Official Capacities ("Off. Capacities Mot. to Dismiss") (Doc. No. 36), and a second Motion to Dismiss, brought by defendants in their individual capacities, see Motion to Dismiss in Defendants' Individual Capacities ("Individual Capacities Mot. to Dismiss") (Doc. No. 37).

The plaintiff opposes both Motions. See Plaintiff's Memorandum of Law in Support of Objection to Defendants' Motion to Dismiss in Official Capacities ("Pl.'s Off. Capacities Opp.") (Doc. No. 42); Plaintiff's Memorandum of Law in Support of Objection to Defendants' Motion to Dismiss in Individual Capacities ("Pl.'s Individual Capacities

Opp.") (Doc. No. 47). For the reasons set forth below, the Motions are granted, with leave to replead.

## II. BACKGROUND

### A. Plaintiff's Alleged Facts[1]

Williams works as a Maintainer 2 for DOT. See Amended Complaint ("Am. Compl.") ¶ 3 (Doc. No. 32). He requested training to advance to a higher-level, more lucrative "Grade 3" position, but his supervisors—Bruno and Kelly, both of whom are white—denied him the opportunity. Id. ¶¶ 4–5. Williams, who is Black, was not given the chance to train for the position while his white colleagues were allowed to do so. Id. ¶¶ 6, 10. Williams has also been forced to perform more arduous work under more intense scrutiny than his white coworkers. Id. ¶ 7.

Bruno and Kelly have held meetings with only white employees "to discuss and coordinate complaints against [Williams] and other African-American employees." Id. ¶ 8. Moreover, Kelly has referred to Williams and other Black employees as "worthless ni***rs", and Bruno told the plaintiff that he will "run the place like a prison and make [the Black employees] feel at home." Id. Bruno and Kelly have also looked the other way as white coworkers called Williams a "lazy n****r." Id.

### B. 2019 Lawsuit

On March 27, 2019, Williams, along with two other plaintiffs, filed a Complaint against Bruno, DOT, and another defendant in this court, see 2019 Complaint, Ex. A to Defs.' Individual Capacities Mot. to Dismiss (Doc. No. 37-2), and they amended that

[1] The facts in this section are drawn from the allegations in the Amended Complaint. See Amended Complaint ("Am. Compl.") (Doc. No. 32).

Complaint on May 9, 2019, see 2019 Amended Complaint ("2019 Am. Compl."), Ex. C to Defs.' Individual Capacities Mot. to Dismiss (Doc. No. 37-4). The Amended Complaint alleged, inter alia, multiple racist remarks, including Bruno's threat to "run the place like a prison" and the comment from another employee that Williams was a "lazy n****r." Id. ¶¶ 56-57. The Amended Complaint also stated that "[m]anagement at [DOT's] Milford Garage has regularly refused to provide the same training opportunity to Hispanic and African-American employees as it has for Caucasians." Id. ¶ 11. Although the Amended Complaint in the 2019 action did not name Joe Kelly as a defendant, it contained multiple allegations detailing Kelly's participation in the racist conduct against Williams and the other plaintiffs. See id.

The defendants filed two Motions to Dismiss in the 2019 action, one on the grounds that the plaintiffs' claims against the defendants in their official capacities were barred by the Eleventh Amendment, see 2019 Motion to Dismiss in Official Capacities (Doc. No. 24), 2019 Docket, Ex. B to Defs.' Official Capacities Mot. to Dismiss (Doc. No. 37-3), and another on the grounds that the court lacked personal jurisdiction over the defendants in their individual capacities, see 2019 Motion to Dismiss for Lack of Jurisdiction (Doc. No. 29), 2019 Docket.

Sometime after the commencement of the lawsuit, the plaintiffs' attorney was suspended from the practice of law in the District of Connecticut. See Order (Doc. No. 31), 2019 Docket. The court ordered the plaintiffs to either obtain new counsel or file pro se appearances with the court by August 22, 2019. Id. The court further ordered that, "[p]rovided that the plaintiffs comply with the August 22 deadline . . . plaintiffs will be allowed until September 12, 2019 to file any opposition to the Motions to Dismiss."

Id. On August 19, 2019, Williams filed a pro se appearance with the court, see Notice of Pro Se Appearance (Doc. No. 35), 2019 Docket, and on September 13, 2019, Williams' new counsel, John T. Bochanis, filed a Notice of Appearance with the court, see Notice of Appearance (Doc. No. 37), 2019 Docket. On September 16, 2023, after receiving no opposition to either of the defendants' Motions to Dismiss, the court granted, "upon review and absent opposition, after notice", the Motion to Dismiss for Lack of Jurisdiction. See Order (Doc. No. 38), 2019 Docket.

On September 17, 2019, Williams moved for an extension of time until October 17, 2019, to respond to the defendants' Motion to Dismiss in their official capacities, see Plaintiff's Motion for Extension of Time (Doc. No. 39), 2019 Docket, which this court granted, see Order (Doc. No. 40), 2019 Docket. On October 23, 2019, after receiving no opposition from Williams or the other plaintiffs, the court granted the defendants' Motion to Dismiss "upon review and absent objection", see Order (Doc. No. 41), 2019 Docket, and entered judgment in favor of the defendants, see Judgment (Doc. No. 42), 2019 Docket.

C. Procedural Background

On August 5, 2022, Williams filed his Complaint against Kelly, Bruno, and the State of Connecticut Department of Transportation ("DOT") in the Connecticut Superior Court. See Complaint ("Original Compl."), Attach. 1 to Notice of Removal ("Not. of Removal") (Doc. No. 1-1). After service was made only on the Office of the Connecticut Attorney General, see Defendants' Memorandum in Support of their Motion to Dismiss, at 1–2 (Doc. No. 12-1), the defendants removed the lawsuit to federal court on September 7, 2022, see Not. of Removal.

On September 14, 2022, the defendants moved to dismiss Williams' original Complaint for lack of subject matter jurisdiction. See Mot. to Dismiss (Doc. No. 12). On February 7, 2023, the court granted the defendants' Motion. See Ruling (Doc. No. 31). In its Ruling, the court dismissed Williams' claims against DOT with prejudice, on the grounds that the claims were barred by the Eleventh Amendment. Id. at 5. The court dismissed Williams' claims against Kelly and Bruno in their official capacities, but it permitted Williams to file an amended complaint against Kelly and Bruno in their official capacities "provided [that] Williams offers a specific request for declaratory or injunctive relief." Id. The court also granted Williams a sixty-day extension to effect proper service of process against Kelly and Bruno in their individual capacities. Id.

On February 22, 2023, Williams filed his Amended Complaint. See Am. Compl. Williams also served Kelly and Bruno, in their individual capacities, on March 2, 2023. See Summons as to Joe Kelly (Doc. No. 34); Summons as to Pasqualino Bruno (Doc. No. 35).

In March 2023, the defendants moved to dismiss (1) all of Williams' claims against them in their official capacities, see Off. Capacities Mot. to Dismiss, and (2) all of Williams' claims against them in their individual capacities, see Individual Capacities Mot. to Dismiss. Williams opposes both Motions. See Pl.'s Off. Capacities Opp.; Pl.'s Individual Capacities Opp.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or

constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Makarova, 201 F.3d at 113. In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion. Makarova, 201 F.3d at 113.

B. Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels

v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). On a motion to dismiss, courts may take judicial notice of indisputable facts, including documents filed in other courts. See Fed. R. Evid. 201; Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Courts may also consider an affirmative defense raised by a pre-answer motion to dismiss, without resorting to summary judgment, if "the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Such a motion is "properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

## IV. DISCUSSION

### A. Official Capacities

The defendants argue that the Amended Complaint against them in their official capacities is barred by the Eleventh Amendment and must be dismissed.[2] See Off. Capacities Mot. to Dismiss; Defendants' Memorandum in Support of Official Capacities Motion to Dismiss ("Defs.' Off. Capacities Mem.") (Doc. No. 36-1). Williams counters

[2] "Whether this immunity argument is brought properly under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit." Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022) (citing Ripa v. Stony Brook Univ., 808 F. App'x 50, 51 n.1 (2d Cir. 2020)). It appears to this court that the better view is that sovereign immunity questions are properly addressed under Rule 12(b)(1). The court will thus consider materials outside the pleadings, including the Affidavit proffered by defendants. See Affidavit of Stephen Moran ("Moran Aff."), Attach. 2 to Defs.' Official Capacities Mot. to Dismiss (Doc. No. 36-2).

that, because he is seeking prospective, injunctive relief against the defendants in their official capacities—i.e., an injunction to permit him to train for a Grade 3 position—his Amended Complaint falls within the Ex parte Young exception to sovereign immunity. See Pl.'s Individual Capacities Opp. at 8-11. The defendants, however, contend that Ex parte Young does not apply to Williams' claim because he (1) fails to allege an ongoing violation of federal law and (2) fails to allege that Kelly and Bruno have the authority to provide the prospective, injunctive relief that his Amended Complaint seeks. See Def.'s Off. Capacities Mem.; Defs.' Reply in Support of Motion to Dismiss (Doc. No. 46).

The Eleventh Amendment prohibits suit against a state in federal court, absent consent of the state or abrogation by Congress. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity extends not only to states themselves, but also to state agencies or state officers in their official capacity. Id.; accord Smith v. Connecticut Dep't of Corr., No. 3:13-CV-00828, 2014 WL 3824357, at *6 (D. Conn. Aug. 4, 2014) (holding that the Eleventh Amendment bars suit against the Connecticut Department of Corrections). In turn, the Eleventh Amendment bars suits for monetary damages against state officials sued in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

The doctrine of Ex parte Young provides that an exception to the Eleventh Amendment exists when a party sues a state official, acting in their official capacity, for prospective, injunctive relief from violations of federal law. Pennhurst, 465 U.S. at 10. To determine whether Ex parte Young applies, the court must "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." See Verizon Md., Inc. v.

Pub. Serv. Comm'n of Md., 535 U.S. 635, 636 (2002) (internal quotation marks omitted). In addition, courts have held that, to sustain an action under Ex parte Young, the named defendants must have some connection to the ongoing violation. See, e.g., Chrysafis v. James, 534 F. Supp. 3d 272, 288 (E.D.N.Y. Apr. 24, 2021) (dismissing a complaint for failing to allege that the defendant official "is herself committing any ongoing violation of federal law"); Blamah v. New York, No. 7:19-CV-9234, 2020 WL 1812690, at *7 (S.D.N.Y. Apr. 8, 2020) (stating that a plaintiff, in her complaint, must "allege [ ] that [the named defendant] has the authority to provide the prospective, injunctive relief [p]laintiff seeks").

As a threshold matter, the court notes that Williams' Amended Complaint is barebones, and it is vague about the timing of the various incidents and conduct that it alleges. Indeed, as noted above, the Amended Complaint contains no dates. Nonetheless, while plaintiff's Amended Complaint details past, racist incidents, it also appears to allege that he has been denied, and continues to be denied, because of his race, training for a more lucrative position. See Am. Compl. ¶ 9 (asserting allegations of the defendants "denying the Plaintiff training for Grade 3 positions" (emphasis added)); id. at ¶ 11 (asserting allegations of the defendants "failing to provide training to [Williams] for the Grade 3 Maintainer position" (emphasis added)). This allegation, liberally construed, is sufficient to constitute an ongoing violation of federal law. See, e.g., St. Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96-97 (2d Cir. 2007) (holding that "the State's present, ongoing failure to re-create [plaintiff's eliminated job] position[ ]" was "both (1) ongoing and (2) potentially curable by prospective relief"); Rosenfield v. N.Y. St. Div. of Veterans' Affs., No. 1:18-CV-1299, 2019 WL 4621962, at

*8-10 (N.D.N.Y. Sept. 24, 2019) (finding that the continued, discriminatory denial of promotions to the plaintiff was, under Ex parte Young, an ongoing violation of federal law).

The Amended Complaint also refers to Kelly and Bruno as Williams' "supervisors". See Am. Compl. ¶ 5.[3] The defendants, in turn, have proffered an Affidavit from Stephen Moran, the Transportation Maintenance Director for District 3, where Williams works. See Affidavit of Stephen Moran, Attach. 2 to Defs.' Official Capacities Mot. to Dismiss, at ¶ 4 (Doc. No. 36-2). Moran attests that Bruno and Kelly have not been in Williams' chain of command since September 2019 and November 2019, respectively. Id. at ¶¶ 14-15, 22-23. In his Opposition, Williams contends that Bruno "is still serving in a supervisory administrative position" in DOT, in the same district as Williams. Pl.'s Off. Capacities Opp. at 11. However, that is insufficient, in this court's view, to demonstrate a connection between the defendants and the alleged ongoing violation. Indeed, it undermines the argument that there is such a connection. Although Williams attests that Bruno currently holds a supervisory position in his District, see id.; Affidavit of Tyquon Williams ("Williams Aff.") ¶¶ 3, 17, Attach. 1 to Pl.'s Off. Capacities Opp. (Doc. No. 42), and, although he testifies that Bruno and Kelly have previously "supervised" him, see Williams Aff. ¶ 3, at no point does he assert that Bruno and Kelly continue to supervise him to the present day.

[3] Although Paragraph 5 of the Amended Complaint refers to Bruno and Kelly as Williams' "supervisors", the court may, under Rule 12(b)(1), consider the Affidavit of Stephen Moran, the current Transportation Maintenance Director for District 3, attesting to the contrary. See Moran Aff. ¶¶ 4, 14-15, 22-23 (testifying that Bruno and Kelly have not been in Williams' chain of command since September 2019 and November 2019, respectively). Williams does not dispute Moran's testimony.

Williams has not proffered testimony that disputes the defendants' assertions that neither Bruno nor Kelly remain in his chain of command. As such, it does not appear that the defendants currently possess the requisite connection to the ongoing violation or the authority to support Williams' request for prospective relief.

Because it appears that neither Kelly nor Bruno currently possesses the requisite authority to remedy the ongoing violation, the defendants' Motion to Dismiss the claims against Kelly and Bruno in their official capacities is granted. However, because the court has found that Williams has plausibly alleged an ongoing violation of his federal rights, the court will grant Williams an opportunity to amend his Complaint and name a defendant, in his or her official capacity, who currently possesses the authority to provide the prospective relief that he seeks, be it a supervisor or another higher officer. See Ighile v. Kingsboro ATC, No. 16-CV-4294, 2018 WL 1970737, at *5 (E.D.N.Y. Apr. 25, 2018) (granting leave to amend a Section 1983 complaint for injunctive relief on the condition that the plaintiff "name appropriate state officials as defendants to invoke the Ex parte Young doctrine"). Williams must plead a proper defendant, in his or her official capacity, within 21 days of the date of this Ruling.

B. Individual Capacities

The defendants argue that Williams' section 1983 claim must be dismissed because (1) the claims asserted in the Amended Complaint were previously alleged in plaintiff's first lawsuit and are therefore barred by the doctrine of res judicata and (2) the claims are otherwise time barred. See Defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Individual Capacities Mem.") at 9-17 (Doc. No. 37-1). The defendants further argue that Williams' claims under the Connecticut Constitution fail

because there is no private cause of action under Article First, Section 20 of the Connecticut Constitution. Id. at 18-23.

i. Claim Pursuant to Article First, Section 20 of the Connecticut Constitution

The defendants move to dismiss Williams' claim under Article First, Section 20 of the Connecticut Constitution. See Individual Capacities Mot. to Dismiss; Defs.' Individual Capacities Mem. at 18-23. The court previously dismissed Williams' Connecticut Constitution claim with prejudice, on the grounds that there is no private right of action under Article First, Section 20. See Ruling at 7- 9 (Doc. No. 31). The court reiterates its prior dismissal, with prejudice, of Williams' Connecticut Constitution claim for the reasons provided in the previous Ruling.

ii. Fourteenth Amendment Claim Pursuant to Section 1983

The defendants contend that a 2019 lawsuit, which Williams and two other plaintiffs brought against Bruno, DOT, and another defendant, precludes litigation of this action. See Individual Capacities Mot. to Dismiss. Under the doctrine of res judicata, or claim preclusion, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[4] See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Res judicata applies when "(1) the previous action involved an adjudication on the merits; (2) the

[4] "The Second Circuit specifically permits the evaluation of the affirmative defense of res judicata on a Rule 12(b)(6) motion to dismiss." See Adams v. Yolen, No. 3:11-CV-1606, 2013 WL 12250380, at *2 (D. Conn. Dec. 5, 2013); accord Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) ("Generally res judicata is an affirmative defense to be pleaded in the defendant's answer. . . . However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."). "In doing so, the Court may consider documents incorporated in the complaint by reference and those of which judicial notice may be taken." Adams, 2013 WL 12250380, at *2.

previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

Here, the defendants' res judicata argument fails at the first step. The court granted the defendants' Motion to Dismiss in their individual capacities for lack of personal jurisdiction and insufficient service of process in the prior action after reviewing the defendants' arguments and the underlying record and concluding that the defendants had not been sufficiently served. See Order (Doc. No. 38), 2019 Docket ("Upon review and absent opposition, after notice . . . the Motion to Dismiss for Lack of Jurisdiction is granted."). See Order (Doc. No. 38), 2019 Docket. As the Second Circuit has held, a district court may not grant an unopposed motion to dismiss under Rule 12(b) simply because it is unopposed; it must examine the merits of the pleadings. See Goldberg v. Danaher, 599 F.3d 181, 183-84 (2d Cir. 2010); accord Riotta v. Playcore, Inc., No. 07–CV-5179, 2008 WL 5169111, at *1 (E.D.N.Y. Dec. 8, 2008) ("The fact that Plaintiffs have neglected to oppose [a motion to dismiss for lack of personal jurisdiction] does not relieve the court of its duty to examine the merits and to consider the allegations in the Complaint.").

In the 2019 action, after reviewing the defendants' arguments and the pleadings, the court granted the defendants' Motion to Dismiss in their individual capacities for lack of personal jurisdiction, insufficient process, and insufficient service of process under Rules 12(b)(2), 12(b)(4), and 12(b)(5), respectively.[5] See Order (Doc. No. 38), 2019

[5] Although the defendants correctly note that, in the 2019 action, the court warned Williams and his fellow plaintiffs that their case could be dismissed for failure to prosecute, this warning specifically pertained to the court's Order that the plaintiffs either obtain new counsel or file pro se appearances with

Docket. Dismissal pursuant to these rules does not constitute a final adjudication on the merits for purposes of res judicata. See Moore v. Mara, No. 08-CV-1946, 2010 WL 3270223, at *5 (D. Conn. Aug. 17, 2010) (noting that rulings pursuant to Rules 12(b)(2) and 12(b)(5) "do not operate" as "adjudication[s] on the merits" for res judicata purposes); Mhina v. Citizens Bank, N.A., No. 22-CV-427, 2022 WL 16572045, at *2 (N.D.N.Y. Nov. 1, 2022) ("A dismissal under Rule 12(b)(4) or Rule 12(b)(5) 'is not on the merits and has no res judicata effect.'" (citing C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1353 (3d ed.)). As such, the court finds that the principle of res judicata does not apply to Williams' present action against the defendants in their individual capacities.

The defendants further contend that Williams' individual capacities claims are time barred. See Defs.' Individual Capacities Mem. at 16-17. Section 1983 "borrows the forum state's statute of limitations", which is three years in the State of Connecticut. See Spencer v. Connecticut, 560 F. Supp. 2d 153, 158 (D. Conn. 2008). As Williams correctly notes, courts in this Circuit, including this court, have held that Governor Lamont's Executive Order 7G ("EO 7G")— which suspended statutes of limitations in Connecticut from March 19, 2020, to March 1, 2021, due to the COVID-19 pandemic—tolled both state and federal statutes of limitations, including the statute of limitations for section 1983 claims. See, e.g., Connelly v. Komm, No. 20-CV-1060, 2021 WL 5359738, at *4 (D. Conn. Nov. 16, 2021); Anderson v. Lewis, No. 3:20-CV-370, 2023 WL 6378924, at *7 (D. Conn. Sept. 29, 2023); Esposito v. Aldarondo, No. 3:22-CV-

---

the court by August 22, 2019. See Order (Doc. No. 38), 2019 Docket. Williams complied with this Order. See Appearance of Self Represented Party by Tyquon Williams (Doc. No. 35), 2019 Docket; Notice of Appearance by John T. Bochanis (Doc. No. 37), 2019 Docket.

00621, 2023 WL 2228412, at *3-4 (D. Conn. Feb. 24, 2023). Applying EO 7G to Williams' claims "bolsters the policy aims of section 1983" by "grant[ing] [Williams] h[is] day in court" to remedy his alleged constitutional deprivation, and "furthers the goal of deterring abuses of power by state officials . . . ." Connelly, 2021 WL 5359738, at *4. Because this court finds that EO 7G tolled the statute of limitations for section 1983, any section 1983 claims by Williams that occurred within three years and approximately 347 days of the commencement of this action against the defendants are timely.

The defendants contend that the action against them in their individual capacities did not commence until March 2, 2023—when Williams served them in their individual capacities—and they further assert that, because Williams "has not identified any factual allegations of personal conduct by either Defendant that occurred after March 15, 2019", his claims are time barred. See Defendants' Reply Brief in Support of Motion to Dismiss, at 6 (Doc. No. 48). As a threshold matter, the court disagrees that March 2, 2023, constitutes the date the action "commenced" for purposes of the statute of limitations. Courts in this Circuit have held, contrary to defendants' assertions, that an action is considered "commenced", in the context of a section 1983 statute of limitations, when a complaint is filed in federal court, and not on "the date an individual defendant was served." Spector v. Bd. of Trs. of Cmty.-Tech. Colls., No. 06–cv–129, 2007 WL 4800726, at *12 n.7 (D. Conn. Dec. 27, 2007); accord West v. Conrail, 481 U.S. 35, 39 (1987) ("[W]hen the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been

'commenced' in compliance with Rule 3 within the borrowed period."); Fed. R. Civ. Proc. 3 ("A civil action is commenced by filing a complaint with the court.").

Nonetheless, even if this action against the defendants did not commence, for statute of limitations purposes, until March 2, 2023—rather than August 8, 2022, when Williams filed suit against the defendants in their official capacities—the court finds that the Amended Complaint, liberally construed, alleges a continuing violation that plausibly occurred after March 15, 2019, within the applicable limitations period. The Amended Complaint alleges that the defendants continually refused to allow Williams to train for a Grade 3 Maintainer position. See Am. Compl. ¶ 9 (asserting allegations of the defendants "denying the Plaintiff training for Grade 3 positions" (emphasis added)); id. at ¶ 11 (asserting allegations of the defendants "failing to provide training to [Williams] for the Grade 3 Maintainer position" (emphasis added)). The Amended Complaint therefore plausibly alleges that this denial of training opportunities was a continuing course of conduct that occurred beyond March 15, 2019, and therefore occurred within the applicable limitations period, when the defendants were Williams' supervisors.[6] Thus, not all the allegations in the Amended Complaint are, on their face, untimely. "[I]n the statute of limitations context[,] . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir.

[6] Indeed, Bruno and Kelly state in their moving papers that they remained within the chain of command overseeing Williams until September 2019 and November 2019, respectively, which is within the applicable limitations period. See Defs.' Individual Capacities Mem. at 8; Moran Aff. ¶¶ 14-15, 22-23.

1999). The defendants have failed to show that the Amended Complaint is clearly untimely in its entirety, and therefore, the court cannot dismiss it on that basis.[7]

However, although the defendants do not raise the issue in their moving papers, the court notes that Williams' Amended Complaint appears to suffer from a different defect. Although Williams' is suing the defendants not only in their official capacities, but also in their individual capacities, his Amended Complaint, unlike the original Complaint, does not seek monetary damages. See Am. Compl. at 5 (solely requesting injunctive relief). Because the Amended Complaint only seeks injunctive relief, and because Section 1983 only permits plaintiffs to seek injunctive relief against state officials in their official capacities, there does not appear to be a sufficient basis for Williams' suit against the defendants in their individual capacities. See Walker v. Wright, No. 17-CV-425, 2018 WL 2225009, at *8 (D. Conn. May 15, 2018) ("[I]njunctive relief may be obtained from state officials only in their official capacity.")

However, it appears to the court that Williams' omission of any mention of damages in the Amended Complaint was a mistake.[8] Williams previously requested monetary damages and attorney's fees in his original Complaint, see Original Compl. at 5, and he appears to believe that he remains entitled to damages, based on assertions that he has made in his moving papers, see Pl.'s Individual Capacities Opp. at 4 (noting

---

[7] The court also notes that the Amended Complaint appears to allege conduct that occurred after May 9, 2019, when Williams and his co-plaintiffs filed their Amended Complaint in the 2019 action, see 2019 Docket, which further bolsters this court's view that res judicata does not apply to the current action. See Storey v. Cello Holdings, LLC, 347 F.3d 370, 383 (2d Cir. 2003) (emphasizing that "[c]laims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action", and accordingly, "they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct'").

[8] Indeed, at the November 1, 2023, oral argument, plaintiff's counsel admitted, on the record, that the omission of any request for monetary damages from the Amended Complaint was a mistake.

that Williams "has alleged", inter alia, that "his earning capacity has been substantially impaired" and "he has and will continue to incur litigation expenses and attorney's fees", "all to his loss and detriment").

The court will therefore grant the defendants' Motion to Dismiss the Amended Complaint in their individual capacities without prejudice, and it will give Williams an opportunity to amend, within 21 days of this Ruling, his demand for relief sought to include a request for damages.

## V. CONCLUSION

For the reasons discussed above, the Motion to Dismiss (Doc. No. 36) is granted without prejudice. Plaintiff may file an Amended Complaint, within 21 days of the date hereof, that pleads, as an official capacity defendant, his current supervisor, or any other person with the authority to give him the relief he seeks. The Motion to Dismiss (Doc. No. 37) is also granted without prejudice. Plaintiff may also amend, within 21 days of the date hereof, to plead a request for damages. While not necessarily required, the court permits plaintiff to amend his allegations regarding the conduct of any defendants. If Williams does not file an Amended Complaint, or if his Amended Complaint fails to comply with this Ruling, his action will be dismissed.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of November 2023.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge