UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYQUON WILLIAMS,<br>    Plaintiff, | :<br>:<br>: | CIVIL CASE NO.<br>3:22-CV-01125 (JCH) |
| v. | :<br>: | |
| PASQUALINO BRUNO, JOE KELLY,<br>STEPHEN MORAN (a/k/a STEVEN MORAN)<br>and DONALD REMSON<br>    Defendants. | :<br>:<br>:<br>:<br>: | JUNE 17, 2024 |

**RULING ON DEFENDANTS' MOTION TO DISMISS[1] (DOC. NO. 70)**

**I.   INTRODUCTION**

Plaintiff Tyquon Williams ("Williams") brings this lawsuit against Pasqualino Bruno ("Bruno"), Joe Kelly ("Kelly"), Stephen Moran ("Moran"), and Donald Remson ("Remson"), under section 1983 of title 42 of the United States Code, alleging constitutional violations in his workplace. Williams, who is black, claims that he has been subjected to racial slurs, denied promotions because of his race, and treated differently from white employees.

Now before the Court is the defendants' third Motion to Dismiss, brought by defendants in their official capacities, see Motion to Dismiss the third Amended Complaint ("Mot. To Dismiss") (Doc. No. 70).

The plaintiff opposes the motion. See Plaintiff's Memorandum of Law in Support of Objection to Defendants' Motion to Dismiss ("Pl.'s Opp.") (Doc. No. 75). For the

---

[1] While characterized as a "Motion to Dismiss the Plaintiff's Third Amended Complaint," defendants motion is in fact a partial Motion to Dismiss. The plaintiff has added in his Third Amended Complaint claims for money damages against defendants Bruno and Kelly in their individual capacities. The defendant's motion to dismiss does not address these claims. Defendants Bruno and Kelly are directed to file an answer to those claims within 14 days.

1

reasons set forth below, the Motion is granted with respect to official capacity claims against defendants Bruno and Kelly, and denied with respect to claims against defendants Moran and Remson.

## II. BACKGROUND

### A. Plaintiff's Alleged Facts[2].

Williams works as a "Maintainer 2" for DOT. See Amended Complaint ("Am. Compl.") ¶ 3 (Doc. No. 61). Williams alleges he has requested training to advance to higher-paying "Grade 3" positions but has been denied by his supervisors – Bruno and Kelly – both of whom are white. Id. ¶¶ 4-5. Meanwhile, his white coworkers have been allowed to train and interview for promotions, while Williams has had to perform "harder job duties" under more intense scrutiny than his white coworkers. Id. ¶¶ 6-7.

Moreover, Bruno and Kelly would also "hold meetings with only [White] coworkers to discuss and coordinate complaints against [Williams] and other African-American employees." Id. ¶ 8. Kelly also allegedly referred to the plaintiff and other Black employees as "worthless ni***rs," and Bruno told the plaintiff he will "run the place like a prison and make [Black employees] feel at home." Id. Additionally, Williams' white colleagues were allowed to refer to him as "a lazy n****r." Id. ¶ 8.

Defendant Moran is the Maintenance Director of DOT District 3, and defendant Remson is District 3 Maintenance Manager. Id. ¶ 5. Both are high-level supervisors in the Plaintiff's maintenance district. Id. Moran and Remson have control over "promotional procedures" applicable to Williams, as well as "control and supervision over the Plaintiff's promotion." Id. ¶¶ 5, 9. Together with Bruno and Kelly, Williams

---

[2] The facts in this section are drawn from the allegations in the third Amended Complaint. See Amended Complaint ("Am Compl.") (Doc. No. 61).

2

alleges that defendants Moran and Remson have denied the plaintiff the opportunity to train and interview for Grade 3 positions of his race, while allowing similarly-situated employees who are not Black to do so. Id. ¶ 9-10.

B.     Procedural Background:

On August 5, 2022, Williams filed the present case in Connecticut Superior Court against defendants Kelly, Bruno, and the State of Connecticut Department of Transportation ("DOT"). See Complaint ("Compl."), Attach. 1 to Notice of Removal ("Not. of Removal") (Doc. No. 1-1). After Williams served only the Office of the Connecticut Attorney General, see Defendants' Memorandum in Support of their Motion to Dismiss, at 1–2 (Doc. No. 12-1), the defendants removed the lawsuit to federal court on September 7, 2022, see Not. of Removal (Doc. No. 1).

On September 14, 2022, the defendants moved to dismiss Williams' original Complaint for lack of subject matter jurisdiction. See Mot. to Dismiss (Doc. No. 12). On February 7, 2023, the court granted the defendants' Motion. See Ruling (Doc. No. 31). In its Ruling, the court dismissed Williams' claims against DOT with prejudice, on the grounds that the claims were barred by the Eleventh Amendment. Id. at 5. The court dismissed Williams' claims against Kelly and Bruno in their official capacities, but it permitted Williams to file an amended complaint against Kelly and Bruno in their official capacities "provided [that] Williams offers a specific request for declaratory or injunctive relief." Id. The court also granted Williams a sixty-day extension to effect proper service of process against Kelly and Bruno in their individual capacities. Id.

On February 22, 2023, Williams filed his first Amended Complaint ("First Am. Compl.") (Doc. No. 32) against defendants Kelly and Bruno. See First Am. Compl.

3

Williams served both defendants in their individual capacities on March 2, 2023.  See Summons as to Joe Kelly (Doc. No. 34); Summons as to Pasqualino Bruno (Doc. No. 35).

In March 2023, the defendants filed two motions to dismiss.  See Motion to Dismiss in Defendants' Official Capacities ("Off. Capacities Mot. to Dismiss") (Doc. No. 36); Motion to Dismiss in Defendants' Individual Capacities ("Individual Capacities Mot. to Dismiss") (Doc No. 37).  The first sought dismissal of all of Williams' claims against defendants in their official capacities, see Off. Capacities Mot. to Dismiss, the second sought to dismiss all of Williams' claims against them in their individual capacities, see Individual Capacities Mot. to Dismiss. Williams opposed both motions. See Plaintiff's Memorandum of Law in Sport of Objection to Defendants' Motion to Dismiss in Official Capacities ("Pl.s Off. Capacities Opp") (Doc. No. 42); Plaintiff's Memorandum of Law in Support of Objection to Defendants' Motion to Dismiss in Individual Capacities ("Pl.'s Individual Capacities Opp.") (Doc. No. 47).

On November 3, 2023, the court granted both motions.  See Ruling (Doc. No. 54).  In its Ruling, the court dismissed Williams' official capacity claims on the grounds that they were prohibited by the Eleventh Amendment, because Williams failed to plausibly allege that Bruno and Kelly could deliver the prospective relief he sought.  Id at 11.  The court also dismissed the plaintiff's individual capacity claims on the grounds that the Amended Complaint did not seek money damages, and Section 1983 only permits plaintiffs to seek injunctive relief against state officials in their official capacities. Id at 17-18.  The court granted the plaintiff a second opportunity to amend his complaint, to (1) plead a defendant with the authority to provide the prospective relief

the plaintiff seeks, and (2) to amend his demand for relief to include a request for damages.  Id at 11, 18.

On November 22, 2023, Williams filed his second Amended Complaint ("Sec. Am. Compl.") (Doc. No. 56), which named Moran and Remson as defendants in the body of the complaint but did not list them in the case caption.  On December 08, 2023, the court issued a *sua sponte* order directing Williams to refile his amended complaint, listing each defendant in the case caption, and specifying whether claims are being brought against each defendant in their individual capacity, official capacity, or both.  Order (Doc. No. 60).

On December 12, 2023, the plaintiff filed his third Amended Complaint. ("3d. Am. Compl." Or "Am. Compl.") (Doc. No. 61), which brought claims under Section 1983 against Bruno and Kelly in their individual and official capacities, and against Moran and Remson in their official capacities only.  Am. Compl. ¶1.  After service was affected, defendants in their official capacities moved to dismiss all of the plaintiff's claims.  See Mot. To Dismiss (Doc. No. 70).  Williams opposes the motion.  See Plaintiff's Memorandum in Opposition ("Pl.'s Opp.")  (Doc. No. 75).

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met

this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  Makarova, 201 F.3d at 113.

      B.     Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  On a motion to dismiss, courts may take judicial notice of indisputable facts, including documents filed in other courts.  See Fed. R. Evid. 201; Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)

("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Courts may also consider an affirmative defense raised by a pre-answer motion to dismiss, without resorting to summary judgment, if "the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998). Such a motion is "properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

## IV.    DISCUSSION

### A.    Defendants Kelly and Bruno

Once again, defendants argue that official capacity claims against Bruno and Kelly are barred by the Eleventh Amendment and must be dismissed.[3] See Mot. To Dismiss; Defendants' Memorandum in Support of Their Motion to Dismiss ("Defs.' Mem.") (Doc. No. 70-1) at 1-2. Williams argues that, because he is seeking prospective, injunctive relief, his Amended Complaint falls within the Ex parte Young exception to Eleventh Amendment immunity. See Pl.'s Opp. at 8-10. The defendants contend that Ex parte Young does not apply because Williams (1) fails to allege that

---

[3] "Whether this immunity argument is brought properly under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit." Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022) (citing Ripa v. Stony Brook Univ., 808 F. App'x 50, 51 n.1 (2d Cir. 2020)). It appears to this court that the better view is that sovereign immunity questions are properly addressed under Rule 12(b)(1). Therefore, the court will consider materials outside the pleadings, including Affidavits proffered by the parties. See Affidavit of Stephen Moran ("Moran Aff."), Attach. 2 to Defs.' Official Capacities Mot. to Dismiss (Doc. No. 36-2), Affidavit of Plaintiff ("Williams Aff."), (Doc. No. 43).

7

Kelly and Bruno have authority to provide the prospective, injunctive relief the Amended Complaint seeks, and (2) fails to allege an ongoing violation of federal law. See Def's Mem.; Defendants Reply to Response to Mot. To Dismiss (Doc. No. 78) at 1.

The Eleventh Amendment prohibits suit against a state in federal court, absent consent of the state or abrogation by Congress. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity extends not only to states themselves, but also to state agencies or state officers in their official capacity. Id.; accord Smith v. Connecticut Dep't of Corr., No. 3:13-CV-00828, 2014 WL 3824357, at *6 (D. Conn. Aug. 4, 2014) (holding that the Eleventh Amendment bars suit against the Connecticut Department of Corrections). In turn, the Eleventh Amendment bars suits for monetary damages against state officials sued in their official capacities. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

The doctrine of Ex parte Young provides that an exception to the Eleventh Amendment exists when a party sues a state official, acting in their official capacity, for prospective, injunctive relief from violations of federal law. Pennhurst, 465 U.S. at 10. To determine whether Ex parte Young applies, the court must "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 636 (2002) (internal quotation marks omitted). In addition, courts have held that, to sustain an action under Ex parte Young, the named defendants must have some connection to the ongoing violation. See, e.g., Chrysafis v. James, 534 F. Supp. 3d 272, 288 (E.D.N.Y. Apr. 24, 2021) (dismissing a complaint for failing to allege that the defendant official "is herself committing any ongoing violation of

federal law"); Blamah v. New York, No. 7:19-CV-9234, 2020 WL 1812690, at *7 (S.D.N.Y. Apr. 8, 2020) (stating that a plaintiff, in her complaint, must "allege [ ] that [the named defendant] has the authority to provide the prospective, injunctive relief [p]laintiff seeks").

At the outset, the court notes that it has already dismissed the official capacity claims against Bruno and Kelly and allowed Williams to replead them. See Ruling, (Doc. No. 54). Because Williams has not substantially modified his allegations with respect to defendants Bruno and Kelly, the court remains unpersuaded.

Williams continues to refers to Bruno and Kelly as "supervisors" in the third Amended Complaint. Am. Compl. ¶ 5. Defendants previously countered with an affidavit from Moran, who was not a defendant at the time.[4] See Affidavit of Stephen Moran, Attach. 2 to Defs.' March 2023 Motion to Dismiss. (Doc. No. 36-2). Moran claimed that Bruno and Kelly have not supervised Williams since September 2019 and November 2019 respectively, and that they currently "have no role or authority" with respect to Williams' employment. Id at ¶ 15, 23. In opposition, Williams stated that Bruno was still serving "in a supervisory administrative position" in the same district as Williams, which the court found unpersuasive because it failed to "demonstrate a connection between the defendants and the alleged ongoing violation" against the plaintiff. See Affidavit of [the] Plaintiff, ("Pl.'s Aff.") (Doc. No. 43) at ¶ 17, see Ruling, (Doc. No. 54) at 10-11.

---

[4] Although the Amended Complaint asserts that Bruno and Kelly "remain in the Plaintiff's chain of command," the Court may, under Rule 12(b)(1), rely on evidence outside the pleadings, including party affidavits.

9

In his second and third Amended Complaint, Williams has now added that Bruno and Kelly "remain in the Plaintiff's chain of command as supervisors in the [DOT] maintenance district in which the Plaintiff is and continues to be employed . . . ." Am. Compl. ¶ 5.  Again, Williams does not allege that Bruno or Kelly remain *his* supervisors, or that they currently have any authority to influence *his* employment. While he now claims that Bruno and Kelly remain in his "chain of command," Williams does not allege, as he does with other defendants, that either Bruno or Kelly has "control and supervision over the Plaintiff's promotion." Id. at ¶ 9.  Bruno and Kelly's presence in the district's management, does not, in the court's view, support the inference that they have the authority to grant Williams the prospective relief he seeks.  The court is also not persuaded that threadbare, conclusory assertions that the "defendants," referred to collectively, "continue to act with malice and bad faith," (Id. at ¶ 11) amount to plausible allegations that Bruno and Kelly presently have influence over Williams' employment. Because Williams has not plausibly alleged that that Bruno and Kelly presently oversee Williams employment, Bruno and Kelly appear, in the court's view, to lack the authority to grant Williams the prospective relief he seeks.

Because Williams has failed to plausibly allege that either Bruno or Kelly possess the requisite authority to remedy the ongoing violation after two opportunities to replead, the claims against Bruno and Kelly in their official capacity are dismissed with prejudice.

Defendants moved to dismiss claims in their official capacities, and did not file a separate motion to dismiss individual capacity claims against Bruno and Kelly.  Mot. to Dismiss at 1.  Further, because the defendants' motion relies solely on arguments based on Eleventh Amendment immunity, its arguments are inapplicable to individual

10

capacity 1983 claims.  See Taylor v. Norwalk Cmty. Coll., No. 313CV1889CSH, 2015 WL 5684033, at *17 (D. Conn. Sept. 28, 2015) "with respect to Section 1983 claims brought against a state official in his or her individual capacity, the state official has no Eleventh Amendment immunity." (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993)). Accordingly, the court denies the Motion to Dismiss Williams' individual capacity claims against Bruno and Kelly.

      B.      Defendants Moran and Remson

The defendants argue that Williams' claims against Moran and Remson in their official capacities must also be dismissed because Williams fails to allege an ongoing violation of federal law.  Mot. to Dismiss at 14.  The defendants argue that nonspecific incidents of discrimination attributed to Bruno and Kelly are discrete, past violations and therefore not ongoing.  Id.  Here, the defendants are retreading old ground.  The court previously rejected the argument that Williams failed to allege an ongoing violation, and the court sees no reason to depart from its previous Ruling.  See Ruling (Doc. No. 31), at 9.  While the plaintiff's Amended Complaint alleges specific past incidents, it also alleges that Williams presently continues to request and be denied, because of his race, training and advancement toward higher-paid positions.  See Am. Compl. ¶ 4 (alleging that the plaintiff has requested training and interviews for advancement "continuing to date," (emphasis added)); id. at ¶ 9 (alleging the defendants "denying the Plaintiff training for Grade 3 positions (emphasis added)); id. at ¶ 11 (alleging the defendants "continue to [ ] act with malice and bad faith in intentionally failing to provide training to the Plaintiff…" (emphasis added)).  Once again, these allegations, liberally construed, are sufficient to plausibly allege an ongoing violation of federal law.  See, e.g., St.

11

Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96-97 (2d Cir. 2007) (holding that "the State's present, ongoing failure to re-create [plaintiff's eliminated job] position[]" was "both (1) ongoing and (2) potentially curable by prospective relief"); Rosenfield v. N.Y. St. Div. of Veterans' Affs., No. 1:18-CV-1299, 2019 WL 4621962, at *8-10 (N.D.N.Y. Sept. 24, 2019) (finding that the continued, discriminatory denial of promotions to the plaintiff was, under Ex parte Young, an ongoing violation of federal law). While some allegations are attributed directly to Bruno and Kelly, Williams nonetheless plausibly alleges, in the court's view, that he continues to experience denials that constitute an ongoing violation of federal law. Because Williams alleges an ongoing violation, and that Moran and Remson have the authority to remedy that violation, Williams' claims may proceed under the Ex parte Young doctrine.

The defendants' Motion to Dismiss with respect to the defendants Moran and Remson in their official capacity is denied.

## V.    CONCLUSION

For the reasons discussed above, the defendants' partial Motion to Dismiss (Doc. No. 70) is granted in part and denied in part. The plaintiff's official capacity claims against Bruno and Kelly are dismissed with prejudice. The defendants' Motion to Dismiss the official capacity claims against Moran and Remson is denied. The plaintiff's individual capacity claims against Bruno and Kelly remain pending.

**SO ORDERED.**

Dated at New Haven, Connecticut 17th day of June 2024.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge